UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| NADINE GIBSON, | ) | CV 15-6973 |
| Plaintiff, | ) | AMENDED COMPLAINT |
| -against- | ) | |
| | | JURY TRIAL DEMANDED |
| THE CITY OF NEW YORK, NEW YORK | ) | |
| POLICE DEPARTMENT POLICE OFFICER | ) | |
| KENNETH SHIELDS, SHIELD #28109 of the 61st | ) | |
| PRECINCT; SERGEANT VLAD KOGAN, | ) | |
| SHIELD # 019999 of 105th PRECINCT; | ) | |
| POLICE OFFICER SERGY ZVONIK SHIELD | ) | |
| #30494of the 79th PRECINCT | ) | |
| Defendants, | | |

-------------------------------------------------------------x

Plaintiff NADINE GIBSON, by her attorneys, FIGEROUX &ASSOCIATES, hereby

brings this action under 42 U.S.C. § 1983 to redress her civil and legal rights, and alleges as

follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which the plaintiff, NADINE GIBSON, seeks relief for

   the Defendants' violations of her rights secured by the Civil Rights Act of 1871, 42

   U.S.C. § 1983, by the United States Constitution, including its First, Fourth and

   Fourteenth Amendments, and by the laws and Constitution of the State of New York.

   Plaintiff seeks compensatory and punitive damages, an award of costs, interest and

   attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

2. This action is brought pursuant to, and the First, Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988 States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

4. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Eastern District of New York, and the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

**JURY TRIAL DEMANDED**

5. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

**PARTIES**

6. At all times relevant to this action, Plaintiff NADINE GIBSON was a resident of Kings County New York. She is currently a resident of Fayette County, Georgia.

7. That at all times hereinafter mentioned, the defendant, CITY OF NEW YORK, hereinafter referred to as "CITY", was and still is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

8. That at all times hereinafter mentioned the defendant, NEW YORK CITY POLICE DEPARTMENT, hereinafter referred to as "NYPD", was and is an agency of the defendant, CITY.

9. Defendant CITY is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant CITY was at all times relevant herein the public employer of Defendants, KENNETH SHIELDS, VLAD KOGAN and SERGY ZVONIK are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Police Department, a municipal agency of Defendant CITY.

10. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the NYPD, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant CITY, and on behalf of, and with the power and authority vested in them by the CITY and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

11. By the conducts, acts, and omissions complained of herein, Defendants KENNETH SHIELDS, VLAD KOGAN and SERGY ZVONIK violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments to the

United States Constitution of which a reasonable police officer under the circumstances would have known.

## STATEMENT OF FACTS

12. Upon information and belief, at all times hereinafter mentioned, and on April 1, 2014, at approximately 6:35 p.m., the above mentioned Police Officers were acting within the scope of their employment and under the direction of the CITY and NYPD as its agents, servants and/or employees.

13. That on and prior to April 1, 2014, Defendants KENNETH SHIELDS, VLAD KOGAN and SERGY ZVONIK were each individually hired, screened, tested, interviewed, trained, retrained, investigated, monitored and supervised by the CITY and NYPD.

14. That on and prior to April 1, 2014, at approximately 6:35 p.m., and all relevant times herein after, Defendants KENNETH SHIELDS, VLAD KOGAN and SERGY ZVONIK individually and/or collectively were acting pursuant to and under the rules and regulations of the New York City Patrol Guidelines.

15. That on April 1, 2014, at approximately 6:35 p.m., Plaintiff NADINE GIBSON was lawfully in the vicinity of Linden Boulevard, between Brooklyn Avenue and East 34th Street in Brooklyn, New York and doing nothing illegal, improper or acting suspicious in anyway.

16. That on the evening of April 1, 2014, at approximately 6:35 p.m. on Linden Boulevard, between Brooklyn Avenue and East 34th Street in Brooklyn, New York, the Plaintiff, NADINE GIBSON, was ordered by the Defendant, KENNETH SHIELDS, to stop her vehicle by reason of an alleged traffic violation. The Plaintiff presented her driver's

license registration and insurance information to Defendant, POLICE OFFICER KENNETH SHIELDS.

17. That on April 1, 2014, at approximately 6:35 p.m., in the vicinity of Linden Boulevard, between Brooklyn Avenue and East 34th Street in Brooklyn, New York, Defendants KENNETH SHIELDS, VLAD KOGAN and SERGY ZVONIK, absent an arrest warrant, probable cause, reasonable cause or any legal justification, approached Plaintiff NADINE GIBSON and summarily stopped, frisked, searched, grabbed, assaulted, battered, and detained her in an aggressive and excessive manner.

18. Upon information and belief Defendants KENNETH SHIELDS, VLAD KOGAN and SERGY ZVONIK knew or had reason to know that their actions lacked any legal justification in searching, seizing and arresting Plaintiff NADINE GIBSON.

19. The Defendants, KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK, for no legitimate reason assaulted, falsely arrested, maliciously prosecuted, unlawfully and falsely imprisoned the Plaintiff, NADINE GIBSON.

20. While arresting the Plaintiff, Defendant SHIELD caused the Plaintiff's clothing to be torn, thereby causing Plaintiff's breast and intimate apparels to be exposed to the public, which was an excessive and unnecessary use of force, abuse of authority, and discourtesy.

21. While in police custody, the Plaintiff, NADINE GIBSON, was escorted to a medical facility in handcuffs to be treated for personal injuries she sustained as result of the forceful contact at the instance of the Defendants. While at the hospital, the Plaintiff complained to Police Officer, "JANE DOE" that the tightened handcuffs were causing her to suffer severe pain and discomfort to her arms and shoulder. Police Officer

"JANE DOE", whose name is more particularly known to the Defendants responded stating in words to the effect that "it's too bad you're not a DOA, they don't complain." Police Officer "JANE DOE" acted in an excessive and unnecessary manner, with abuse of authority, discourtesy, and offensive language.

22. That Plaintiff NADINE GIBSON was arraigned after his arrest and thereafter falsely and maliciously prosecuted with committing a crime and other related offenses.

23. Thereafter, Plaintiff NADINE GIBSON was required to make numerous court appearances over an extended period of time.

24. Plaintiff NADINE GIBSON sustained physical and emotional pain and injuries as a result of this incident.

AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF NADINE GIBSON

25. Plaintiff NADINE GIBSON repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1-24 with the same force and effect as if fully set forth at length herein.

26. That on or about April 1, 2014, at approximately 6:35 p.m., the Plaintiff NADINE GIBSON was without just cause, probable cause or provocation, and with reckless, negligent and callous disregard for the truth, and without investigation, touched, grabbed, handcuffed, seized and arrested in an excessive manner and with excessive force by CITY, NYPD, KENNETH SHIELDS, VLAD KOGAN, and SERGEY

ZVONIK, their agents, servants and/or employees, and in particular, by KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK.

27. That on or about April 1, 2014, at approximately 6:35 p.m., the Plaintiff NADINE GIBSON was lawfully in the vicinity of Linden Boulevard, between Brooklyn Avenue and East 34th Street in Brooklyn, New York, was without just cause, probable cause or provocation, maliciously, intentionally deprived Plaintiff NADINE GIBSON of her dignity.

28. That at all times hereinafter mentioned the actions of CITY, NYPD, KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK as described above were carried out in a reckless, deliberate, willful, wanton, malicious and grossly negligent manner.

29. That by reason of the foregoing, Plaintiff NADINE GIBSON has been damaged in an amount that exceeds the jurisdictional limits of all lower trial courts of this state.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF NADINE GIBSON

30. Plaintiff NADINE GIBSON repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1-29 with the same force and effect as if fully set forth at length herein.

31. That the CITY, NYPD, their agents, servants and employees were negligent, careless and reckless in hiring, retaining, training, monitoring, retraining, supervising and promoting its employees including but not limited to KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK, in that said police officers, as employees of CITY

and NYPD, were not qualified to be hired or retained or promoted as police officers, lacked the experience, skill, training and ability to be employed, retained and utilized in the manner that each was employed by CITY and NYPD.

32. The above described events and unnecessary and unreasonable use of force against the Plaintiff NADINE GIBSON was the result of the policies, practices and customs of the CITY and NYPD to inadequately supervise and discipline law enforcement officers who use excessive force, and to inadequately train law enforcement officers on the use of force and proper police conduct under the circumstances such as existed at the time of the events described in this pleading.

33. That the CITY and NYPD failed to exercise due care and caution in its hiring, retaining, training and/or promoting practices in that CITY and NYPD failed to adequately test, analyze test results, and/or investigate above mentioned police officers backgrounds and performances.

34. That the CITY and NYPD failed to exercise due care and caution in its hiring, retaining, training and/or promoting practices in that CITY and NYPD failed to adequately test, analyze test results, and/or investigate above mentioned police officers backgrounds and performances.

35. That the CITY and NYPD failed to exercise due care and caution in its hiring, retaining, training and/or promoting practices in that CITY and NYPD failed to adequately screen said police officers, failed to adequately monitor said police officers, and failed to adequately discipline said police officers when they violate Patrol Guidelines.

36. Defendant CITY and NYPD were also negligent in that prior to and at the time of the acts complained of herein, due to the prior history of the police officer defendants named herein, knew or should have known of the bad disposition of said defendants, or at the very least had knowledge of facts that would put a reasonably prudent employer on inquiry concerning their bad disposition and the fact that defendant police officers were not suitable to be hired and employed by the CITY and NYPD and that due to their lack of training, these officers should have had adequate supervision so that they would not arrest innocent individuals nor use excessive force during the arrest process.

37. The inadequate training, supervision and discipline of police officers by the CITY and NYPD has led to the unnecessary and illegal use of excessive force such as that which occurred on April 1, 2014. The failure of police officers to intervene and protect private citizens when their fellow police officer while in their presence engages in excessive force such as that which occurred on April 1, 2014, and the failure of police officers to report the illegal activity of their fellow police officers such as occurred regarding the events of April 1, 2014.

38. The policy, practice and custom of the CITY and NYPD with respect to the standard set forth by the NYPD patrol guide do not adequately guide officer behavior. At the street-level a police officer's response and discretion are guided by discretionary factors which include the cues police officers receive from the management level concerning the implementation of a particular norm, such as police orders and special training.

39. That by reason of the above, the Plaintiff NADINE GIBSON was injured in mind and body as she was arrested, prosecuted and rendered sick, sore, and damaged.

40. That at all times hereinafter mentioned the actions of CITY, NYPD and all defendants herein as described above were carried out in a reckless, deliberate, willful, wanton, and malicious manner.

41. That by reason of the foregoing, Plaintiff NADINE GIBSON has been damaged in an amount that exceeds the jurisdictional limits of all lower trial courts of this state.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF NADINE GIBSON

42. Plaintiff NADINE GIBSON repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered 1-41 with the same force and effect as if fully set forth at length herein.

43. In arresting Plaintiff NADINE GIBSON, police officers including but not limited to KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK, acting in their capacity as agents, servants and employees of CITY and NYPD, were motivated by an ulterior purpose to do harm, without justification or economic or social excuse.

44. In arresting Plaintiff NADINE GIBSON, police officers including but not limited to KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK, acting in their capacity as agents, servants and employees of CITY and NYPD, sought either a detriment to Plaintiff NADINE GIBSON or a collateral advantage to the CITY and NYPD that is outside the legitimate ends of effectuating an arrest.

45. As a result of the abuse of process by defendants herein, Plaintiff NADINE GIBSON sustained multiple injuries including but not limited to loss of liberty, emotional distress, and humiliation, loss of enjoyment of life, and fear and intimidation for her safety.

46. That at all times hereinafter mentioned the actions of CITY, NYPD and all defendants herein as described above were carried out in a reckless, deliberate, willful, wanton, and malicious manner.

47. That by reason of the foregoing, Plaintiff NADINE GIBSON has been damaged in an amount that exceeds the jurisdictional limits of all lower trial courts of this state.

AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF NADINE GIBSON

48. Plaintiff NADINE GIBSON repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1-47 with the same force and effect as if fully set forth at length herein.

49. That on April 4, 2014 at approximately 6:35 p.m., within the vicinity of Linden Boulevard, between Brooklyn Avenue and East 34th Street in Brooklyn, New York, the CITY and NYPD were present through its agents, servants and/or employees including but not limited to KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK who were acting in the course of their employment and under the color of law to wit: the statutes, ordinances and regulations, policies and customs and usage of the State of New York and/or City of New York.

50. That Plaintiff NADINE GIBSON was lawfully in the above vicinity at the above time when she was stopped, questioned, searched and seized solely on the basis of her age and/or race and for no legal or legitimate reason.

51. That said illegal stop and seizure was part of the CITY'S custom and practice and/or practice of racial profiling, and/or meeting arrest or summons quotas, and/or the illegal stop and search of civilians which was authorized by, or met with the tacit approval of the CITY and NYPD under their "Stop, Question and Frisk" policy or program ("Stop and Frisk").

52. That under the "Stop and Frisk" program the CITY and NYPD permitted, condoned, or acted with deliberate indifference to the racial disparity of its application, to the fact that unnecessary or illegal frisks or searches were conducted, that very low percentages of seizures, frisks and searches resulted in arrests or the recovery of contraband, that pretextual reasons are provided for "Stop and Frisk", that officers do not always fill out Stop and Frisk reports, i.e. UF-250s, and are not disciplined when they fail to do so, that stop and frisks are conducted without reasonable suspicion, and that the program of "Stop and Frisk" has resulted in illegal stops, seizures, frisks, arrests and the use of physical force.

53. That the CITY and NYPD have failed to discipline, train, monitor or retrain offending police officers; who engaged in stops and frisks without any legal justification and has failed to discipline police officers who fail to fill out required UF-250s.

54. That the CITY and NYPD have failed to adequately investigate and/or discipline officers who use excessive force, stop and frisk innocent citizens who have not done anything illegal or acted in suspicious manner warranting a seizure, who failed to

report misconduct of fellow officers, who destroy evidence, who engage in fraud, misrepresentations, deceit, who knowingly arrest individuals whose mere presence in a location is the only nexus to any type of contraband when same is not in plain view and the individual has no knowledge of its presence and maliciously participate in and instigate prosecutions of innocent citizens.

55. It is alleged herein that Plaintiff NADINE GIBSON was stopped and seized absent reasonable suspicion. That said actions of defendants were pursuant to an illegal and improper Stop and Frisk program that was promulgated by defendants. That such custom, policy and program has created a class of citizens, including Plaintiff NADINE GIBSON, who have been illegally stopped and seized, searched and questioned based on their race, and in order to meet arrest quotas. Evidence of said policy is as follows:

    a. That in *Floyd v. City of New York*, Plaintiffs, who were African-American and Hispanic individuals were stopped by police pursuant to New York City's stop-and-frisk policy, brought putative class action against city, under § 1983, alleging that policy violated their Fourth and Fourteenth Amendment rights and seeking injunctive relief. 959 F. Supp. 2d 540 (S.D.N.Y. 2013). In *Floyd v. City of New York*. The following facts, were discussed in detail and are uncontested:

        i. Between January 2004 and June 2012, the NYPD conducted over 4.4 million Terry stops. The number of stops per year rose sharply from 314,000 in 2004 to a high of 686,000 in 2011.

ii. 52% of all stops were followed by a protective frisk for weapons. A weapon was found after 1.5% of these frisks. In other words, in 98.5% of the 2.3 million frisks, no weapon was found.

iii. 8% of all stops led to a search into the stopped person's clothing, ostensibly based on the officer feeling an object during the frisk that he suspected to be a weapon, or immediately perceived to be contraband other than a weapon. In 9% of these searches, the felt object was in fact a weapon. 91% of the time, it was not. In 14% of these searches, the felt object was in fact contraband. 86% of the time it was not.

iv. 6% of all stops resulted in an arrest, and 6% resulted in a summons. The *559 remaining 88% of the 4.4 million stops resulted in no further law enforcement action. In 52% of the 4.4 million stops, the person stopped was black, in 31% the person was Hispanic, and in 10% the person was white.

v. In 2010, New York City's resident population was roughly 23% black, 29% Hispanic, and 33% white. In 23% of the stops of blacks, and 24% of the stops of Hispanics, the officer recorded using force. The number for whites was 17%. Weapons were seized in 1.0% of the stops of blacks, 1.1% of the stops of Hispanics, and 1.4% of the stops of whites. Contraband other than weapons was seized in 1.8% of the stops of blacks, 1.7% of the stops of Hispanics, and 2.3% of the stops of whites.

      vi.   Between 2004 and 2009, the percentage of stops where the officer failed to state a specific suspected crime rose from 1% to 36%.

   b.  The District Court, Honorable Judge Shira A. Scheindlin, J., held that:

      i.   plaintiffs' expert was more reliable than City's experts;

      ii.  officers violated plaintiffs' Fourth and Fourteenth Amendment rights in various encounters;

      iii.  New York City officials ignored obvious need for better supervision, monitoring, training, and discipline;

      iv.  City's practices under policy were sufficiently widespread that they had force of law;

      v.   plaintiffs provided sufficient basis for inference of City's discriminatory intent in applying its policy;

      vi.  policy depended on express racial classifications; and

      vii.  City officials demonstrated deliberate indifference to equal protection violations.

      viii.  Evidence shows that the Stop and Frisk program is organized and hierarchical;

      ix.  The program is the result of institutional decisions and directives.

56. Other instances of an illegal and/or improper stop and frisk program custom or practice and/or excessive use of force and filing of false charges includes but not limited to:

   a.  *Hickey v. Ward*, where substantial evidence supported police commissioner's determination that officer used excessive force against a citizen, without just

cause, when he pushed citizen, as well as struck him in the face with portable radio, while trying to effect a stop and inquiry. 161 A.D.2d 495, 555 N.Y.S.2d 763 (1990).

b.  Arrestee's allegations that he was already in custody and restrained by handcuffs, showing no attempt to resist, when arresting officer used stun gun on him were sufficient to state a claim against officer for use of excessive force in violation of the Fourth Amendment. U.S.C.A. Const.Amend. 4. *Boyden v. Township of Upper Darby*, 5 F. Supp. 3d 731 (E.D. Pa. 2014).

c.  Genuine issue of material fact existed as to whether police officers used excessive force during arrest for unpaid traffic violation fine when they handcuffed arrestee in the back, pushed him down and kneed him in the back and leg, ignoring his request to be handcuffed in the front due to having recently had surgery, precluding summary judgment in officers' favor on qualified immunity grounds in arrestee's § 1983 action for excessive force in violation of the Fourth Amendment. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983. *Hunt v. Massi*, 5 F. Supp. 3d 160 (D. Mass. 2014).

d.  On June 2, 2011 in Bronx, NY, Jesus Rosario, was approached by several police officers from the 41st Precinct. He was told to "get on the wall" and thereafter patted down and searched. Mr. Rosario was accused of Trespassing in the Second Degree. Mr. Rosario was doing nothing illegal or improper at the time the officers approached as he was simply exiting 1000 Simpson Street after visiting his father who resides in said building. After being arrested. Mr. Rosario was subjected to a strip search at the 41st Precinct. The

case was declined to be prosecuted by the District Attorney's Office. *Rosario v. City of New York*, 2012 WL 6755553

e.  On January 22, 2011 in the vicinity of 808 Park Avenue, Brooklyn, NY, Captain Michelle Culp, a now retired Captain for New York City Department of Corrections, was visiting her sick and elderly mother at the aforementioned address and decided to walk her mother's dog. In so doing, Captain Culp was approached by several uniform housing police officers and accused of Trespassing in the Second Degree. She was patted down and searched. This, despite the fact that Captain Culp explained that she was visiting her mother and her identification and personal belongings were in her mother's apartment in the same building. All charges were dismissed. *Marcel GRANT, Tyrone Shields, Gary Castillo, Angel Santiago and Isaiah Santana, Plaintiffs, v. CITY OF NEW YORK, New York City Police Department, Detective Peter Valentin, Detective Alberto Pizarro, Detective Anthony Rumph, Lieutenant Joseph Karakous, Police Officer John Doe and Police Officer John Roe, Defendant(s).*, 2013 WL 5972605 (N.Y.Sup.)

57. Further instances of a pattern of illegal acts, or lack thereof, alone or together with other factors, on the liability of supervisory officials or government entities for having failed to adequately train, supervise, or control individual peace officers who violated a plaintiff's civil rights are as follows:

58. *Norton v McKeon* (1977, ED Pa) 444 F Supp 384, aff'd without op (CA3 Pa) 601 F2d 575 and aff'd without op (CA3 Pa) 601 F2d 575, infra § 6[a], the court stated that a mayor and a police chief owed a duty to the public and thus to a § 1983 plaintiff to

provide for training and supervision of police officers, and that such duty included responding in some positive way to known patterns of illegal activity by the police department.

59. See *Paton v La Prade* (1979, DC NJ) 471 F Supp 166, an action against federal officers analogous to the right of action one would have against the state official under § 1983, in which the court stated that the existence of general policies and practices within an organization can create a constructive knowledge on the part of the supervisor of the alleged constitutional deprivations and that causation can be established on the fact that a subordinate's action is an implementation of such policies or practices endorsed by the supervisor.

60. In a § 1983 action against a city by an arrestee who was allegedly beaten, threatened, and coerced by police officers, the court, in *Wilkinson v Ellis* (1980, ED Pa) 484 F Supp 1072, held sufficient to state a § 1983 claim against the city an arrestee's allegations as to the repeated use of brutal and unlawful police methods and the city's refusal, through the acquiescence of a number of the most highly placed supervisory police officials, to enforce existing rules or laws prohibiting such conduct. The arrestee alleged that the city failed properly to train or control its police officers and had in effect condoned the use of unlawful and brutal police methods by openly and repeatedly refusing to discipline or arrest officers who violated the law, and further alleged that certain city police department supervisory officials either had knowledge of an ongoing pattern of the use of illegal and abusive methods by the police, or were actually present at some or all of the unlawful interrogations alleged in this case. The court stated that official inaction, at least in the sense of neglecting to enforce laws

already on the books, could become so entrenched as to qualify as a custom within the scope of § 1983. Accordingly, the court denied the city's motion to dismiss.

61. The CITY'S custom and practice and/or practice of racial profiling, and/or meeting arrest or summons quotas, and/or the illegal stop and search of civilians which was authorized by, or met with the tacit approval of the CITY and NYPD also extends to other areas that implicitly or explicitly form a policy or a program that is carried out and implemented in an egregious, malicious, deliberate, indifferent and unconstitutional fashion.

62. The CITY and NYPD on a consistent and constant basis, with or without a valid search warrant, with or without lawful entry onto private real property or a premises such as an apartment, unlawfully detain, harass, seize, search, destroy and illegally remove personal property and thereafter arrest individuals within such a premises who are neither leaseholders nor owners of said premises and who are only present in a room on said real property where contraband is not in plain view.

63. The above must be considered, as the facts herein suggest, when an individual is in a room on a premises where contraband is not in plain view, it cannot be said, as a matter of law, that said individual is to be in actual or constructive possession of contraband nor in possession pursuant to a Penal Law statutory presumption. Nonetheless, defendants on a consistent and constant basis unlawfully stop, seize, search and arrest individuals, such as the Plaintiff herein, in such a scenario even though the stop, seizure and arrest of said individual, including Plaintiff herein, is lacking in reasonable cause, probable cause or legal justification.

64. The foregoing acts, omissions and systemic failures are customs and polices of the CITY and NYPD which caused the police officers herein to falsely arrest, maliciously prosecute, illegally seize and search the Plaintiff unlawfully, commit an assault and battery to Plaintiff's person under the belief that said police officers would not suffer any disciplinary actions for their improper and unconstitutional conduct.

65. As the same fact patterns are present over the past several years with alarming frequency, it is apparent and obvious that a pattern by the CITY and NYPD has developed and is in place demonstrating continued violations of individuals similarly situated to the Plaintiff herein. The pattern demonstrates either a defacto policy or custom that exists to allow this behavior by failing to discipline its officers or that this is a custom of its police officers who have no and/or insufficient training and/or no proper supervision and/or disciplinary penalties assessed against them for continued acting in an unconstitutional manner.

66. That the acts of employees of the CITY and NYPD, i.e. police officers, who violate the civil and constitutional rights of the citizens of the City of New York routinely go unreported, undisciplined and their acts condoned by other officers, including their supervisors. Upon information and belief, the supervisors of defendant police officers herein were aware of the conduct of defendant police officers and failed to stop, report or intervene in the misconduct.

67. In sum, the CITY and NYPD are responsible for creating a custom, policy or practice wherein many officers do not seem to believe that anything is really wrong with stopping and searching innocent citizens or using unnecessary or excessive force or falsely arresting citizens to meet an arrest quota.

68. That the above customs, polices and/or practices and the deliberate indifference thereto, was a direct and proximate cause of the illegal seizure of Plaintiff NADINE GIBSON, the excessive use of force on Plaintiff, and the false arrest and malicious prosecution of Plaintiff. The CITY and NYPD'S polices, customs and/or practices deprived the Plaintiff of her rights and liberties as set forth in the Constitutions of the United States and the State of New York and under 42 U.S.C §§ 1983, 1986 and 1988.

69. That said actions violated the Fourth and Fourteenth Amendments to the Constitution of the United States, violated Plaintiffs right to be secure in person, and that the defendants used excessive, unnecessary and unlawful force, which constituted cruel and inhumane treatment and denied her due process of law.

70. Moreover, the CITY and NYPD caused or created a policy and/or custom, and acted with deliberate indifference to patterns and/or police practices which included illegal seizures, excessive or arbitrary use of force, illegal use of police equipment, destruction of evidence, intimidation of witnesses, illegal arrests, failing to gather evidence when allegations of police misconduct are involved, condoning a code of silence within the NYPD regarding misconduct, failing to take police reports of illegal conduct, failing to properly supervise, train, investigate or discipline officers, and any and/or all of the above have contributed to Plaintiffs false arrest, malicious and false prosecution, and injuries.

71. That by reason of the foregoing, Plaintiff NADINE GIBSON has been damaged in an amount that exceeds the jurisdictional limits of all lower trial courts of this state.

72. The above actions of defendants CITY, KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK resulted in Plaintiff NADINE GIBSON  being deprived of the

following rights under the United States Constitution: a) freedom from assault to his person; b) freedom from battery to her person; c) freedom from illegal search and seizure; d) freedom from false arrest; e) freedom from malicious prosecution; f) freedom from the use of excessive force during the arrest process; and g) the right to due process of law.

73. In addition to the above, defendant CITY and the NYPD have as a matter of policy, custom and practice and with deliberate indifference failed to adequately train, monitor, supervise, discipline, sanction or otherwise direct its police officers, including the officers involved in this case and any and all unnamed officers involved in the unlawful seizure and arrest of plaintiff, regarding the protection of the constitutional rights of citizens.

74. .Defendants CITY, NYPD, KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK subjected Plaintiff NADINE GIBSON to such deprivation in a malicious, reckless, deliberate, intentional, and, a callous disregard of Plaintiff NADINE GIBSON'S rights and with deliberate indifference to those rights under the Fourth, Fifth, Sixth, Fourteenth and all other related Amendments to the United States Constitution.

75. The direct and proximate result of the defendants CITY, NYPD, KENNETH SHIELDS, VLAD KOGAN, and SERGEY ZVONIK acts are that Plaintiff NADINE GIBSON has suffered severe and permanent injuries, loss of liberty and companionship, forced to endure pain and suffering, emotional distress and severe and significant dam age to standing and reputation in the community.

76. That by reason of the foregoing, Plaintiff NADINE GIBSON has been damaged in an amount that exceeds the jurisdictional limits of all lower trial courts of this state.

77. As a proximate result of Defendant, KENNETH SHIELDS' negligent use of excessive force, Plaintiff, NADINE GIBSON sustained physical and emotional pain and suffering and was otherwise damages and injured WHEREFORE, Plaintiff demands the following relief jointly and severally against all of the Defendants:

a) Compensatory Damages in the amount to be determined by a jury;

b) Punitive Damages in an amount to be determined by a jury

c) Costs and interest and attorney's fees;

d) Such other and further relief as this Court may deem just and proper.

Dated: August 4, 2016
Brooklyn, New York

Yours etc.,

Brian Figeroux, Esq. for
the Plaintiff, NADINE GIBSON
FIGEROUX & ASSOCIATES
26 Court Street, Suite 701
Brooklyn, NY 11242
718-834-0190